## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RITA LEE NONNEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-657-STE** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-34). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 15, 2016, the alleged disability onset date. (TR. 18). At step two, the ALJ determined that Ms. Nonnen had the following severe impairments: dysfunction of a major joint; bipolar disorder; depression; an intellectual disorder; and a generalized anxiety disorder. (TR. 18). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).

At step four, the ALJ concluded that Ms. Nonnen retained the residual functional capacity (RFC) to:

> [P]erform sedentary exertion work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant can never climb ladders, ropes, or scaffolds; the claimant can occasionally crouch, crawl, and climb ramps and stairs; and the claimant can frequently balance. Mentally, the claimant can understand, remember, and carry out simple and detailed instructions, but not complex instructions. The claimant can make judgments on simple and detailed work-related decisions, but not complex work-related decisions. The claimant is able to interact appropriately with the public. The claimant can interact appropriately with co-workers and supervisors on an occasional work basis. The claimant is able to respond appropriately to usual work situations and changes in a work setting that is simple or detailed, but not complex. The claimant has no other physical or mental limitations.

(TR. 24). Also, at step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (TR. 32).

At the administrative hearing, the ALJ presented these limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 102-105). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 106-107). The ALJ adopted the VE's testimony and concluded that during the relevant period, Ms. Nonnen was not disabled at step five based on her ability to perform the identified jobs. (TR. 33-34).

## III.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805

F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.    ISSUES PRESENTED

Ms. Nonnen alleges: (1) error in failing to develop the record; (2) error at step

three; (3) error in the RFC; (4) "harmful errors of fact" and (5) error at step five.

## V.    DEVELOPMENT OF THE RECORD

Plaintiff alleges that the ALJ erred in his development of the record by failing to

incorporate records from a 2013 disability application into the current record. (ECF No.

22:10; 29:3-5). The Court agrees.

An ALJ has the duty to develop he record by obtaining pertinent, available medical

records which come to his attention during the course of the hearing. *See Carter v.

Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). As noted in the decision, Ms. Nonnen

previously applied for disability benefits in 2013. (TR. 15). At the administrative hearing,

the ALJ noted the 2013 applications and stated:

> I would propose to make [Plaintiff's] file as complete as possible. That we
> take all the case data and case information that the commissioner chose to
> preserve from the one back in 2013 and add it to the documents that we
> have in the current file.
>
> . . .
>
> We'll admit into evidence, then—thank you for all of that—exhibits numbers
> 1A through 8A, 1B though 16B, 1D through 11D, 1E through 16E, 1F
> through 25 F, and of course, the documents from that 2013 file some time
> ago.

(TR. 46, 47).

Despite the ALJ's statement to incorporate the records from the 2013 case file to the current record, a review of the evidence in the case file does not indicate that this was done. *See* TR. The Tenth Circuit Court of Appeals has held that "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing *Groves v. Apfel,* 148 F.3d 809, 810–11 (7th Cir. 1998) (noting that evidence submitted in earlier application for benefits is relevant to subsequent disability application when determining whether claimant is disabled by a progressive condition)). Mr. Saul argues that the 2013 records "were wholly irrelevant to the ALJ" because: (1) the ALJ did not rely on them in finding Plaintiff not disabled and (2) the ALJ refused to re-open Plaintiff's prior application. (ECF No. 25:7). Neither argument is persuasive.

First, the ALJ's own reference to incorporating the former records indicates that he believed they might have been relevant to the current decision. Obviously, the ALJ did not undertake a detailed review of the evidence at the time of the hearing; rather he waited until the hearing had concluded to review the file and render his decision. But for whatever reason, the 2013 file records were not added to the current file. Without the records, the Commissioner cannot definitely conclude that the ALJ would have reached the same finding of non-disability, especially in light of the ALJ's decision to incorporate the earlier evidence.

Second, the Tenth Circuit has rejected the argument that an examination of medical evidence from an earlier, adjudicated period somehow re-opens a prior disability application. *See Hamlin*, 365 F.3d at 1215, n. 8. As a result, the Court finds Defendant's second argument without merit.

Because the ALJ deemed the prior evidence necessary to render the current file "complete," these records shall be incorporated into the record on remand.

## VI.   STEP THREE

Plaintiff alleges the ALJ committed legal error at step three in the consideration of her mental impairments. (ECF No. 22:13-18). The Court disagrees.

### A.   Criteria at Step Three

At step three, the ALJ must determine whether the claimant's impairment is "equivalent to one of a number of listed impairments that the Secretary acknowledged as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). If this standard is met, the claimant is considered *per se* disabled. *Knipe v. Heckler*, 755 F.2d 141, 146 (10th Cir. 1985). The question of whether a claimant meets or equals a listed impairment is strictly a medical determination. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990); 20 C.F.R. §§ 404.1525(c)(3)-(4), 404.1526(b), 416.925(c)(3)-(4), 416.926(b). "The claimant has the burden at step three of demonstrating, through medical evidence, that his impairments "meet *all* of the specified medical criteria" contained in a particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Once the claimant has produced such evidence, the burden is on the ALJ to identify and discuss any relevant listings. *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 n. 3 (10th Cir. 2005). In doing so, the ALJ must weigh the evidence and make specific findings to support the step three determination. *Clifton v. Chater*, 79 F.3d at 1009.

## B. The ALJ's Step Three Findings

At step three, the ALJ considered Listings 12.04 (depressive, bipolar, or related disorders); 12.05 (intellectual disorder); and 12.06 (anxiety or obsessive-compulsive disorder) in considering whether Plaintiff's mental impairments met or equaled a listing. (TR. 21-24). In doing so, the ALJ considered: (1) the opinions of State Agency psychologists, Dr. Randy Cochran and Dr. Letitia Sandrock; (2) examination findings from various medical professionals at St. Anthony's Hospital and Red Rock Behavioral Health Services; and (3) a "Disability Report" and "Function Report" completed by Ms. Nonnen. *See* TR. 21-22.

Listings 12.04 and 12.06 require that the individual satisfy criteria "A" and "B" or "A" and "C". *See* Listings 12.04 & 12.06. For both Listings, the "B" criteria require:

Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information;
2. Interact with others;
3. Concentrate, persist, or maintain pace;
4. Adapt or manage oneself

*See* Listings 12.04 & 12.06.

For both Listings, the "C" criteria require:

The individual's mental disorder to be "serious and persistent;" that is, the presence of a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*See* Listings 12.04 & 12.06.

In concluding that Plaintiff did not satisfy the "B" criteria of either Listing, the ALJ found that Ms. Nonnen had suffered only "moderate" limitations of mental functioning in all four areas. *See* TR. 21-22. In concluding that Plaintiff did not satisfy the "C" criteria, of either Listing, the ALJ found:

- "The record did not establish that the claimant had only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life;" and

- "[T]he record shows the claimant can function adequately outside a highly supported setting."

(TR. 22).

Listing 12.05 requires satisfaction of either the "A" or "B" criteria:

A. Satisfied by 1, 2, and 3:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning;

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

B. Satisfied by 1, 2, and 3:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information;
b. Interact with others;
c. Concentrate, persist, or maintain pace; or
d. Adapt or manage oneself

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

Listing 12.05. In determining that Plaintiff did not satisfy Listing 12.05, the ALJ found:

- The "A" criteria were not satisfied because "there is no evidence the claimant is not able to participate in standardized testing of intellectual functioning" and "a psychological evaluation found the claimant had strengths in adaptive skills;" and

- The "B" criteria were not satisfied because "the claimant does not have more than moderate mental limitations due to her conditions" and "treatment notes indicate the claimant's symptoms had improved.

(TR. 23, 24).

### C. Plaintiff's Allegations

Plaintiff alleges six errors in connection with the ALJ's consideration of the evidence at Step Three. (ECF No. 13-18). The Court finds no merit in Plaintiff's arguments.

First, Plaintiff alleges that the ALJ "gave more weight in his analysis of the Claimant's mental limitation to Dr. Cochran's opinion than he did to any of her past physicians or treatment centers, despite Dr. Cochran having a suspended license for violations of the Psychologists Licensing Act and Rules of the Board. The ALJ should have looked at the total medical history of the Claimant, instead of relying solely on medical opinions from a suspended State psychologist." (ECF No. 22:13-14). The Court rejects this allegation of error, because the ALJ did not solely rely on Dr. Cochran's opinion, but instead referenced examination notes from medical professionals at St. Anthony's hospital and Red Rock Behavioral Health Services. *See supra*; *see* TR. 21-22. Furthermore, Dr. Cochran rendered his opinion on October 10, 2018, prior to his license suspension on April 19, 2019, thus the ALJ was entitled to rely on the opinion. *Compare* TR. 185 *with* ECF No. 22-1.

Second, Ms. Nonnen alleges error in the ALJ's reliance on Dr. Sandrock's opinion because Dr. Sandrock had only analyzed whether Plaintiff had met Listing 12.04. (ECF No. 22:14). But as stated, the ALJ relied on other evidence and medical opinions in

concluding that Plaintiff had not met Listings 12.04, 12.05, and 12.06. *See supra*. As a result, the Court finds this challenge without merit.

Third, Plaintiff argues error in relying on the opinions from Dr. Cochran and Dr. Sandrock because these psychologists never actually examined Plaintiff and "it is unclear which medical records were actually reviewed by them." (ECF No. 22:14). Again, the Court disagrees. A medical professional's examining relationship with the claimant is only one factor which is considered when the ALJ evaluates a medical opinion. *See* 20 C.F.R. §§ 404.1520c(c); 416.920c(c). Thus, the ALJ's consideration of the State Agency psychologist's opinions despite the lack of an examining relationship was acceptable. Additionally, both Dr. Cochran and Dr. Sandrock listed the medical records they reviewed prior to rendering their opinions. *See* TR. 178-185, 195-203.

Fourth, Plaintiff alleges that the ALJ failed to discuss findings from a series of psychological examinations in August and September 2019 which included Plaintiff scoring below the first percentile in areas of attention, concentration and mathematical manipulation, and scoring in the second percentile in her ability to process and retain information. But Ms. Nonnen has not explained how those findings would support the finding of a listed impairment. Furthermore, although the ALJ did not discuss these findings at step three, he undertook a thorough examination of the findings in discussing Plaintiff's RFC at step four. TR. 27-28. This allegation is without merit.

Fifth, Plaintiff takes issue with the ALJ's consideration of Listing 12.05–Intellectual Disorder. According to Ms. Nonnen, the ALJ ignored: (1) significant evidence related to

Plaintiff's deficits in various areas of adaptive functioning and (2) Plaintiff's low IQ score. (ECF No. 22:15-17). The Court concludes that any error in this regard was harmless.

As stated, an individual can meet Listing 12.05 by satisfying the criteria in subsection (A) or (B). *See supra*. Even if the ALJ had erred in ignoring evidence of Plaintiff's adaptive functioning or IQ scores, subsection (A) would still have not been satisfied based on the ALJ's finding that Plaintiff was able to participate in standardized testing of intellectual functioning, a finding which Plaintiff does not challenge. Thus, the pertinent Listing is 12.05(B), which requires a finding that three elements have been met:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>
>> b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> a. Understand, remember, or apply information;
>> b. Interact with others;
>> c. Concentrate, persist, or maintain pace; or
>> d. Adapt or manage oneself; and
>
> 3. Evidence about the individual's current intellectual and adaptive functioning and about the history of the disorder which demonstrates or supports the conclusion that the disorder began prior to age 22.

At step three, the ALJ concluded that subsection (B) had not been met based on a finding that Plaintiff suffered from only "moderate" mental limitations—i.e.—the areas of functioning outlined in (2). (TR. 24). In support of his finding in the area of Plaintiff's ability to "adapt or manage oneself," the ALJ relied on: (1) the 2019 psychological examination which found that Plaintiff "had strengths in adaptive skills;" (2) Plaintiff's "appropriate appearance and grooming; (3) Plaintiff's "feeling overwhelmed;" and (4) Plaintiff's "need[ing] help or encouragement to do things." (TR. 22).

According to Ms. Nonnen, the ALJ ignored a significant amount of evidence related to deficits in adaptive functioning set forth in the 2019 psychological evaluation. (ECF No. 22:15-16). The evaluation utilized the Adaptive Behavior Assessment System-Third Edition (ABAS-3) to assess Plaintiff's adaptive functioning. (TR. 1024-1025). The ABAS-3 measured Plaintiff's adaptive functioning in the areas of:

- Home living, health, and safety;

- Communication;

- Community use;

- Adaptative functioning at work;

- Functional academics and self-direction; and

- Social and leisure.

(TR. 1024-1025). According to Plaintiff, the ALJ ignored evidence from the evaluation report which concluded that Ms. Nonnen displayed deficits in these areas. (ECF No. 22:15-16). Indeed, in every functional area, the report noted areas in which Plaintiff struggled. *See* TR. 1024-1025. However, any error by the ALJ in failing to consider this evidence at

step three is rendered harmless by the ALJ's subsequent review of the evidence at step four.

At step four, the ALJ thoroughly reviewed the 2019 psychological evaluation and concluded:

> [O]n the ABAS-3, Mrs. Nonnen reported notable limitations in adaptive skills across numerous areas, including: communication, community use, work, functional academics, self-direction, social, and leisure. Examples of these limitations include being unable to independently answer complex questions, follow paper/digital maps to find a destination, follow a daily work schedule, carry money or make small purchases, plan for the future, or seek and maintain friendships with others her age. Based on Mrs. Nonnen's observed deficits in intellectual or adaptive functioning, a diagnosis of Intellectual Disability, Moderate is warranted. . . . Mrs. Nonnen has significant difficulty with intellectual and adaptive functioning in terms of employment, in social interactions, and in daily living activities. However, the claimant's "paragraph B" abilities do not reveal extreme findings.

(TR. 27-28). Based on the ALJ's specific finding that Plaintiff's deficits in adaptive functioning would not result in an "extreme" limitation, the Court can decisively find that the ALJ would not have reached a different conclusion with regards to Listing 12.05(B), even if he had considered the evidence at step three, based on the absence of evidence supporting 12.05(B)(2). Thus, any error committed by the ALJ at step three in failing to discuss the ABAS-3 evidence when evaluating Listing 12.05 was harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) (finding: "the ALJ's confirmed findings at steps four and five of his analysis, . . . conclusively preclude Claimant's qualification under the listings at step three. No reasonable factfinder could conclude otherwise. Thus, any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless.").

As stated, Plaintiff also alleges that the ALJ erred at step three by failing to discuss her low IQ score. *See supra*. But this allegation is without merit because even with Plaintiff's full-scale IQ of 57,[1] Plaintiff could still not meet Listing 12.05 in the absence of subsection (2).

Finally, and in support of a finding that she met Listing 12.04, Plaintiff notes medical records which document a depressed mood, diminished interest in activities, appetite disturbance with change in weight, decreased energy, feelings of guilt and worthlessness as evidence, difficulty in concentrating and thoughts of death and suicide.[2] But Ms. Nonnen has not explained how this evidence would satisfy the criteria of Listing 12.04. As a result, the Court finds this allegation without merit.

## VII.   RFC LIMITATIONS

Plaintiff alleges that the ALJ committed legal error by failing to account for all of her limitations in the RFC. (ECF No. 22:7-9). Specifically, Ms. Nonnen alleges: (1) the ALJ ignored non-severe impairments and failed to account for them in the RFC; (2) the ALJ ignored permanent restrictions from a treating physician, without explanation, and failed to include them in the RFC; and (3) the ALJ failed to analyze the impact of Plaintiff's mental impairments on her RFC. (ECF No. 22:7-9). The Court finds merit in Plaintiff's second argument.

---

[1] *See* TR. 1021.
[2] Plaintiff does not specifically cite Listing 12.04, but she references Listing 12.00(B)(3)(a), which defines the characteristics of Listing 12.04. *See* ECF No. 22:18; Listing 12.00(B)(3)(a).

### A.      Non-Severe Impairments

Ms. Nonnen first alleges that in the RFC, the ALJ failed to account for her non-severe impairments involving stress incontinence, chronic knee and hip pain, and being off-task. (ECF No. 22:7). According to Plaintiff, "nothing was included in the RFC to account for extra bathroom breaks to account for Ms. Nonnen's improved but still existing stress incontinence, . . . [or] need to change positions or have extra breaks due to her ongoing chronic knee and hip pain. . . [or] to be off-task in the workplace for even a short amount of time due to ongoing pain[.]" (ECF No. 22:7). But Plaintiff does not point to any evidence in the record in support of limitations related to these areas, and the Court will not comb the record for evidentiary support. *See Kirkpatrick v. Colvin*, 663 F. App'x  646, 649 (10th Cir. 2016) (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments."); *Murphy v. Astrue*, 2011 WL 2144610, at * 6 (W.D. Okla. May 14, 2011) (rejecting allegation of error for "failure to develop the factual—and legal—bases for [the] argument."); *see also Murrell v. Shalala,* 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (finding that inadequately framed or developed "perfunctory complaints" are insufficient to invoke review).

### B.      Permanent Restrictions

On October 9, 2017, treating physician Dr. Brandon Johnson examined Plaintiff and opined that she would need permanent work-related restrictions involving: Light duty, no lifting, pushing, or pulling over 20 pounds, no climbing, no stooping, and no twisting. (TR. 785). Ms. Nonnen alleges that the ALJ ignored, without explanation, Dr. Johnson's opinion, and the Court agrees.

### 1.    ALJ'S Duty to Evaluate Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 404.1527(c) & 416.927(c). For claims filed after March 27, 2017, such as that filed by Ms. Nonnen,[3] 20 C.F.R. §§ 404.1520c and 416.920c, provide that the Commissioner no longer will "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). Instead, the ALJ need only articulate how persuasive he finds the medical opinion. 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. §§ 404.1520c(b)(2) & (c)(1)-(2) & 416.920c(b)(2) & (c)(1)-(2). In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(c)(3)-(5) & 416.920c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285,

---

[3] *See* TR. 15.

1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."); And if the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

## 2. Error in the ALJ's Consideration of Dr. Johnson's Opinion

Despite a 20-page extremely thorough opinion, the ALJ omitted, without explanation, discussing the permanent restrictions given by Dr. Johnson. The Commissioner argues otherwise, stating: "The ALJ found Dr. Johnson's opinion persuasive (Tr. 30), but limited Plaintiff to sedentary work that involved occasional crouching, crawling, and climbing (Tr. 24)." (ECF No. 25:9). Defendant's argument is not persuasive.

Mr. Saul's reference to the ALJ's consideration of Dr. Johnson's opinion involved temporary restrictions given by Dr. Johnson on April 20, 2017, not the permanent restrictions given on October 9, 2017. *See* TR. 29, 30. And although the opinions offered the same restrictions, the Court is unable to track the ALJ's reasoning in his consideration thereof. For example, although the ALJ found Dr. Johnson's opinion persuasive, he appeared to reject the physician's opinion that Plaintiff would need a job involving no stooping or twisting, as the RFC was silent as to those particular limitations. *See* TR. 24. The Commissioner attempts to defend the omission by arguing that Dr. Johnson's opinion

is consistent with the jobs identified by the VE at step five. (ECF No. 25:9-10). According to Mr. Saul: "Each job [relied on at step five] is a sedentary job, and thus does not require lifting more than 10 pounds. . . [and] each job requires no crawling, climbing, [or] crouching." (ECF No. 25:10).

As an initial matter, the Court notes that at step five, the ALJ found, based on testimony from the VE, that Plaintiff was capable of performing the job of bench assembly worker, DOT 723.687-010. (TR. 33). As pointed out by Plaintiff, the DOT job number provided by the ALJ actually correlates with the job of "patcher" rather than "bench assembly worker." *See* ECF No. 22:5; Compare DOT 723.687-010 (patcher) with DOT 706.684-042 (bench assembly worker). Mr. Saul defends the citation to the job of "patcher," stating that the job is "***an*** assembler job, covering electrical components with insulating fabric." (ECF No. 25:9) (emphasis added). The Court, however, is not convinced that the ALJ meant to cite the job of "patcher" rather than the job of "bench assembler," because the latter was identified by the VE at the hearing[4] and the jobs, although similar, have some differing exertional requirements. Without clarification, the Court discounts the ALJ's reliance on that job, leaving the ALJ's step five finding that Plaintiff could perform the jobs of document preparer and food and beverage order clerk. (TR. 33-34).

As to those jobs, Mr. Saul's argument is still problematic in that he, too, omits any reference to Dr. Johnson's limitations on stooping and twisting. Although neither job

---

[4] *See* TR. 106-107.

involves stooping,[5] the limitation of twisting required testimony from a VE because it is not addressed by the Selected Characteristics of Occupations (SCO) which applies to jobs outlined in the DOT. *See Mehlhoff v. Colvin*, 2015 WL 4666158, at *10 (N.D. Okla. 2015) (stating: "The SCO does not address the physical demand of twisting, so the ALJ would have to rely on the testimony of a vocational expert to determine whether plaintiff could perform other work with a limitation on twisting.") (*report and recommendation rejected in part, on other grounds* in *Mehlhoff v. Colvin*, 2015 WL 4666091 (N.D. Okla. Aug. 6, 2015). The VE did not testify as to the impact of twisting on the ability to perform either job, owing to the fact that the ALJ failed to present such limitation in the hypothetical to the VE at the administrative hearing. *See* TR. 102-105. The ALJ was not required to present the limitation in the hypothetical, but only after he had first provided a reasonable explanation regarding why he had rejected the limitation in the first instance. The ALJ failed to do so and the error warrants remand. See *Ricketts v. Berryhill*, 2017 WL 6624025, at *5-*6 (W.D. Okla. Dec. 28, 2017) (remanding for consideration of treating physician's opinion regarding twisting limitation when the ALJ failed to comment on the opinion and the limitation was not present in the RFC).

## C.    Mental Impairments

In her final allegation of error challenging the RFC, Plaintiff argues that the ALJ: (1) failed to specifically analyze the impact of Plaintiff's mental impairments involving her limited reading ability and bipolar episodes and (2) failed to explain why he ignored severe

---

[5]  *See* DOT 249.587-018 (document preparer) & 109.567-014 (food and beverage order clerk).

mental impairments at step four. (ECF No. 22:8-9; 29:1-2). The Court finds that neither of these arguments have merit.

First, regarding Plaintiff's limited reading ability and bipolar episodes, Ms. Nonnen has not identified in the record any work-related functional limitation necessitated by either limitation that exceeds the limitations reflected in the RFC. (ECF No. 22:8-9). As stated, it is Plaintiff's burden to identify specific work-related limitations related to the limitations and the Court will not search the record in an attempt to construct Plaintiff's argument. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the burden is on claimant to establish disability in the first four steps of sequential analysis); *Kirkpatrick v. Colvin*, 663 F. App'x at 649 (rejecting plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how [the RFC's] restrictions fail to account" for his impairments and "it isn't our obligation to search the record and construct a party's arguments").

Second, regarding mental impairments deemed severe at step two, Plaintiff states: "the ALJ found that [Plaintiff] has at least five (5) severe impairments, four (4) of which are mental impairments, at Step 2, yet indicates in his step four analysis that 'the claimant does not have any more than moderate mental limitations due to her conditions.' " (ECF No. 22:9). Ms. Nonnen has misstated the record. The ALJ's finding regarding "moderate mental limitations" was a finding made at step three, during the ALJ's consideration of the Listings, not a finding made at step four. *See* TR. 24. Even so, Plaintiff maintains that the step two "severe" impairments "absolutely have an effect on her ability to obtain and maintain work, and if actually considered, would have been included in her RFC." (ECF

No. 22:9). But again, Plaintiff has failed to explain how, exactly, the impairments would have impacted the RFC or affected her ability to work. Without more, the Court rejects this allegation.

## VIII.  ALLEGED HARMFUL ERRORS OF FACT

In proposition (D) of her brief, Ms. Nonnen alleges "harmful errors of fact in the analysis of the medical records and the consistency of claimant's statements." (ECF No. 22:18). Specifically, Plaintiff alleges three errors, but the Court finds them to be without merit.

### A.      Listing 1.02

First, Plaintiff challenges the ALJ's step three evaluation of Listing 1.02, which pertains to a major dysfunction of a joint—in this case, Plaintiff's right hip. Listing 1.02 states:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Listing 1.02. At step three, the ALJ concluded that Plaintiff's hip impairment did not meet or equal Listing 1.02. (TR. 21). In doing so, the ALJ outlined the requirements for Listing 1.02 and stated:

> Here, the claimant alleged the symptoms of right hip pain. (See, e.g., Ex. 8F, 1; Ex. 15F, 2). However, despite finding an antalgic gait, examinations showed normal range of motion, ability to move all extremities, no sensory deficit, normal muscle strength and tone, normal reflexes, no extremity edema, and ability to ambulate without assistive devices. (See, e.g., Ex. 8F, 2, 10; Ex. 10F, 19, 41, 57).

(TR. 21). According to Ms. Nonnen, the ALJ ignored evidence related to her hip pain and improperly relied on evidence in his explanation.

First, Plaintiff alleges that the ALJ ignored the fact that Exhibit 8F at 2 noted pain in her lumbar spine, right buttocks, and sciatic area along with reduced range of motion and a positive straight leg test. (ECF No. 22:19). Ms. Nonnen also points out that in Exhibit 8F at page 10, the ALJ ordered a formal examination of Plaintiff's hip. But Plaintiff does not explain how these findings would have satisfied the criteria for Listing 1.02. Thus, the Court finds no error in the ALJ's failure to specifically note these findings. *See Clifton*, 79 F.3d at 1009–10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Second, Plaintiff also challenges the ALJ's reliance on exhibit 10F at page 19—acknowledging that the record noted normal range of motion, but alleging the ALJ improperly relied on the same because the record was dated July 17, 2015—almost a full year prior to Plaintiff's hip injury. (ECF No. 22:19). However, as noted, the ALJ also relied on Exhibit 10F at pages 41 and 57, dated January 4, 2018 July 19, 2018—after Plaintiff's

May 2016 workplace injury—which found normal range of motion. *See* TR. 891, 907. Thus, any improper reliance on the record which pre-dated Plaintiff's injury was harmless.

## B. The ALJ's Consistency Analysis

Plaintiff argues that the ALJ's consistency analysis was flawed. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in this analysis include:

- the claimant's attempts to find relief and willingness to try any treatment prescribed;

- a claimant's regular contact with a doctor;

- the possibility that psychological disorders combine with physical problems;

- the claimant's daily activities; and

- the dosage, effectiveness, and side effects of the claimant's medication.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3) 416.929(c)(3).

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Ms. Nonnen alleges that the consistency finding is not supported by substantial evidence because the ALJ relied on forms completed by Plaintiff, but failed to mention that Plaintiff had not personally completed the forms because she had difficulty reading. (ECF No. 22:19). According to Plaintiff, the forms "were filled out by third parties and were not fully accurate." (ECF No. 22:19-20). But Plaintiff does not allege how the forms were inaccurate or otherwise substantiate this allegation. *See* ECF No. 22:20. Plaintiff also alleges that the ALJ mischaracterized the evidence by stating that Plaintiff could "drive a vehicle and shop in stores." (ECF No. 22:20). According to Ms. Nonnen, the ALJ failed to mention that Plaintiff only drives if she is "going to the dollar store down the street" and that she had to have the driving test written questions read to her. (ECF No. 22:20-21). But even eliminating the rationale of Plaintiffs ability to drive as a basis for his consistency analysis, the Court concludes that the ALJ's evaluation was otherwise supported by substantial evidence, as the ALJ relied on:

- Plaintiff's daily activities, including the ability to prepare simple meals, do laundry, and wash dishes, clean the house, go outside, play cards, watch television, play on the phone, and spend time with others;

- The fact that Plaintiff worked part-time after the alleged onset date;

- Treatment notes which indicated Plaintiff's symptoms had improved;

- Plaintiff's testimony that she could speak and read English; and

- An inconsistency in Plaintiff's statements regarding whether she had ever attended Special Education classes.

(TR. 32). Finally, Ms. Nonnen alleges that the claimant's medical records and testimony provide an "overwhelming amount of supporting evidence" which contradicts the ALJ's consistency findings. (ECF No. 22:21). But Plaintiff has failed to develop this argument or cite to specific evidence in support of this argument, rendering it meritless.

In sum, the Court finds the ALJ's consistency analysis was appropriate and satisfied SSR 16-3p. Accordingly, the Court rejects this allegation of error.

## C.    Plaintiff's Mental Impairments

In evaluating Plaintiff's mental impairments, the ALJ had to rate the degree of Plaintiff's functional limitations in four areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a & 416.920a. The ALJ complied with this procedure and found Plaintiff suffered from "moderate" limitations in all four areas. (TR. 22). Ms. Nonnen challenges the ALJ's conclusions, alleging fault with the ALJ's reliance on certain evidence in support of his findings and alleging that he should have considered other evidence to reach a different conclusion. *See* ECF No. 22:22-25. The

Court rejects this challenge, as it amounts to nothing more than an attempt to re-weigh the evidence, which the Court cannot do. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

## IX.   STEP FIVE

As stated, at step five, the ALJ concluded that Plaintiff was not disabled based on her ability to perform the jobs of document preparer and food and beverage order clerk. *See supra*. Both jobs require "reasoning level 3;" "math level 1;" and "language level 2." *See* DOT 249.587-018 (document preparer) & DOT 209.567-014 (food and beverage order clerk). Ms. Nonnen alleges that the step five finding lacked substantial evidence because Plaintiff's mental impairments were inconsistent with those required by the identified jobs. (ECF No. 22:11-13; 29:2-3, 5-7).

However, based on the recommended remand for reconsideration of Dr. Johnson's opinion and the inclusion of additional evidence, the step five findings may change. As a result, the Court makes no finding on the step five issue and declines consideration of the same. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties.

Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on June 30, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE